## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————
                                             )
**UNITED STATES OF AMERICA**                 )
                                             )
          **v.**                             )     **CRIMINAL NO.  16-191 (RJL/GMH)**
                                             )
**ANTHONY ADDISON,**                         )
                                             )
               **Defendant.**                )
—————————————————————————)


## DETENTION MEMORANDUM

This matter comes before the Court upon the application of the United States that Defendant, Anthony Addison, be detained pending trial.  Defendant has been charged by Indictment with three counts of Engaging in the Business of Dealing with Firearms without a License, in violation of 18 U.S.C. § 922(a)(1)(A), three counts of Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), two counts of Unlawful Distribution of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and two counts of Using, Carrying, and Possessing a Firearm during a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1).  A detention hearing was held on November 1, 2016.

Upon consideration of the proffers and arguments of counsel and the entire record herein, the Court ordered Defendant held without bail pursuant to 18 U.S.C. § 3142(e).  This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention."  18 U.S.C. § 3142(i)(1).  The findings of fact and statements of reasons in support of the Order of Detention follow.

**FINDINGS OF FACT**

At the detention hearing, the United States proceeded by proffer based on the Indictment. The defense offered no contrary evidence. Accordingly, the Court makes the following findings of fact regarding the government's investigation.

In early July 2016, the Alcohol, Tobacco and Firearms Agency (ATF), with the assistance of other law enforcement agents, began a criminal firearms and narcotics investigation related to the distribution of weapon and narcotics contraband in the Franklin Commons, N.E. area of Washington, D.C. In July 2016, ATF, with the assistance of a confidential informant (CI), contacted Defendant and began arranging purchases of firearms and narcotics. From July 1, 2016 through October 11, 2016, agents attempted to set up six transactions, resulting in the actual purchase of illegal firearms on three occasions and narcotics on two occasions. Each purchase was aided by the use of at least one confidential informant and made in the area of the 600 block of Hamlin Street, N.E., Washington, D.C. In preparation for each transaction, ATF agents met with the CI, who was searched and found not to possess any firearms and/or narcotics. After each purchase, ATF agents recovered firearms and/or narcotics that were purchased from Defendant. At least two of the transactions were recorded, and all of them were monitored by ATF agents through in-person surveillance.

**A.      July 8, 2016 Controlled Purchase**

On July 8, 2016, ATF agents, with the assistance of a CI, arranged to purchase a firearm from Defendant. At approximately 6:56 p.m., after being searched, ATF agents gave the CI $800 of prerecorded funds and placed a wire transmitter on the CI's person to monitor the transaction. At approximately 7:03 p.m., the CI left and walked to meet Defendant. The agents observed the

2

CI as they walked to the target location of 8th and Hamlin Streets, and at approximately 7:12 p.m., an ATF agent observed Defendant on 8th Street.  The agent observed Defendant crouch down near a black vehicle just before arriving at the intersection of 8th and Hamlin Streets.  At approximately 7:13 p.m., the CI, still being watched by the ATF agents, began to walk back to the location where they originally met the agents.  At approximately 7:18 p.m., the CI was picked up by the agents and turned over a plastic bag which contained a Ruger P95 9mm semi-automatic pistol whose serial number was partially obliterated.  The CI stated that they purchased the firearm for $800 from Defendant at the dead end of 8th and Hamlin Streets.  The firearm had a fifteen-round capacity magazine inside of it, but was not loaded.  Later, the firearm was test fired and found to be operable.

### B.    July 14, 2016 Attempted Controlled Purchase

On July 14, 2016, again with the assistance of a CI, ATF agents made arrangements to purchase a rifle from Defendant at the same location.  Upon arriving at the location, the CI, fitted with an audio and video transmitting and recording device, spoke with Defendant and learned that he did not have the rifle.  After Defendant confirmed the CI had the money to complete the transaction, they agreed to reconvene twenty to thirty minutes later, at which time the "source" would have arrived, according to Defendant.  However, no transaction occurred.

### C.    July 19, 2016 Controlled Purchase

On July 19, 2016, ATF agents, assisted by a CI, made arrangements to purchase a SKS-style rifle along with cocaine base.  Around 8:30 p.m., the agents fitted the CI with a wire transmitter and a digital audio recorder.  During this incident, the agents maintained visual surveillance of the CI as they approached the transaction location, 643 Hamlin Street, N.E., Apt. 3, Washington,

D.C.  The CI entered Apartment 3.  In the living room, Defendant removed the cocaine from a pillow.  Next, while still inside the apartment, Defendant received a phone call from the "source."  After viewing the rifle, the CI gave $1650.00 to Defendant for the rifle and cocaine base.  The suspected cocaine base was later found to weigh, with packaging, 3.2 grams.  A field test was positive for the presence of cocaine.  The rifle was test fired and found operable.

**D.     July 25, 2016 Attempted Controlled Purchase**

On July 25, 2016, at approximately 8:55 p.m., the CI met with Defendant in Apartment 3 at the Hamlin Street residence to purchase a Tec 9, 9mm semi-automatic handgun.  The CI was fitted with a wire transmitter and digital audio recorder and monitored by ATF agents.  While inside Apartment 3, Defendant told the CI that the Tec 9 was not available, but that he hoped to acquire a Taurus Millennium 9mm.  Defendant stated that the CI would not have to pay a large amount for the firearm and reduced the price to $1050.00.  After the CI had waited inside Defendant's apartment for about one hour, the ATF agents terminated the deal.

**E.     September 29, 2016 Controlled Purchase**

On September 29, 2016, ATF agents, with the assistance of two confidential informants (CI and CI-2), made arrangements with Defendant to purchase a loaded Glock 22 .40 caliber handgun for $1100.00 and 3.5 grams of cocaine base for $150.00.  The CIs arrived at Apartment 3 at approximately 5:48 p.m.  Defendant directed them to an alley by the apartment complex, saying that he was waiting for his cousin.  The firearm, he said, was on the floorboard in his cousin's vehicle, and CI-2 should retrieve the gun and place it inside CI-2's bag.  Defendant told CI to follow him into the apartment, where CI paid for the firearm and the cocaine base.  This transaction was recorded aurally and visually.  The suspected cocaine base later tested positive for cocaine,

and was found to weigh approximately one gram.  The firearm was tested and found to be operable.  It had one round of ammunition in the chamber and at least ten in the magazine.

### F.        October 11, 2016 Attempted Controlled Purchase

On October 11, 2016, with the assistance of the CI, ATF agents made arrangements to purchase a Mac 10 9mm handgun for $1550.00 from Defendant.  However, Defendant called to say that the source had not delivered the firearm.  No transaction occurred.

### G.        October 27, 2016 Search Warrant Execution

On October 27, 2016, the assigned ATF agents travelled to 643 Hamlin Street to execute a search warrant on the apartment.  They encountered Defendant outside the building and detained him.  While the apartment is not leased to Defendant, he was in possession of a key and an electronic key fob device used to access the apartment.  In the apartment's kitchen, agents found a plate containing trace amounts of a white, rock-like substance.  They found two rounds of .40-caliber ammunition and eleven rounds of .45-caliber ammunition in the kitchen drawers.  In a hallway closet, they recovered a gun box for a Tec 9 9mm handgun.  Finally, they recovered a receipt and an empty holster for a .380 caliber handgun.

## DISCUSSION

### A.        Legal Standard

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e).  Thus, even absent a flight risk, danger to the community alone

is sufficient reason to order pretrial detention.  *United States v. Salerno*, 489 U.S. 739, 755 (1987);

*United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846,

848 (8th Cir. 1986).  Where the judicial officer's justification for detention is premised upon the

safety of the community, the decision must be supported by "clear and convincing evidence."  18

U.S.C. § 3142(f).  Where the justification for detention is the judicial officer's finding that no set

of conditions will assure the defendant's appearance in court, such a decision must be supported

by a preponderance of the evidence.  *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir.

1987).

Where there is probable cause to believe that the defendant has committed certain types of

offenses, a rebuttable presumption arises that the defendant constitutes a danger to the community

and that no pretrial release condition or combination of conditions may be imposed to reasonably

assure the appearance of the person as required and the safety of the community if he is released.

*See* 18 U.S.C. § 3142(e)(3); *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986) (hold-

ing that a grand jury indictment established probable cause sufficient to create a rebuttable pre-

sumption under Section 3142(e)).  One such type of offense is an offense for which a maximum

term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, 21

U.S.C. § 801 *et seq.*  18 U.S.C. § 3142(e)(3)(A).  Here, Defendant's cocaine base charges carry a

maximum penalty of twenty years' imprisonment.  21 U.S.C. § 841(b)(1)(C).  Another such type

of offense is an offense involving the use or carrying of a firearm during and in relation to a drug

trafficking crime under 18 U.S.C. § 924.  Here, Defendant is charged with two counts of violating

18 U.S.C. § 924(c)(1).[1]  Either of these offenses is sufficient to trigger the rebuttable presumption

---

[1] At the detention hearing, Defendant raised a challenge to the legal and factual sufficiency of the section 924(c)(1) charges he faces.  Because the Defendant has been indicted on that charge, the Court makes not determination as to

under Section 3142(e)(3)(A).

Once the rebuttable presumption is triggered, it imposes a burden of production on the defendant "to offer some credible evidence contrary to the statutory presumption." *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). As this Court recently emphasized, "[w]hile the burden of production may not be heavy, the applicable cases all speak in terms of a defendant's obligation to introduce 'evidence.'" *United States v. Lee*, Crim. Action No. 16-0023-4 (ABJ), 2016 WL 3659892, at *3 (D.D.C. July 1, 2016) (citations omitted). Thus, some actual evidence and not mere speculation must be offered to rebut the presumption. In the face of the presumption, which "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial," a defendant "should 'present all the special features of his case' that take it outside 'the congressional paradigm[.]'" *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)); *see also United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (finding that the presumption "represents Congress' general factual view about the special flight risks and the special risks of danger to the community presented by defendants who commit the crimes to which it attaches").

That said, the burden of persuasion on the issue of detention remains, as always, with the government. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). But even where the defendant offers evidence to rebut the presumption, the presumption is not erased. Rather, the "presumption is incorporated into the other factors considered by this Court in determining whether to grant a conditional release and is given substantial weight." *United States v. Ali*, 793

---

its legal sufficiency. In any event, Defendant makes no challenge to the legal sufficiency of his drug distribution charge, which, like the section 924(c )(1) charge, carries with it a rebuttable presumption of pretrial detention pursuant to section 3142(e)(3)(A).

F. Supp. 2d 386, 291 (D.D.C. 2011); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (noting the Section 3142(e) presumption does not disappear when rebutted, but "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)").

### B.     The Rebuttable Presumption

The Court finds that Defendant has not introduced sufficient evidence to rebut the presumption against him.  Defendant asserts that pretrial detention is unwarranted, and asks the Court to place him into the High Intensity Supervision Program at either his mother's residence, where he himself has resided for the last twenty years, or the residence of his girlfriend of ten years.  Both residences are located in Washington, D.C.  Defendant points out that he is a lifetime resident of the District of Columbia region, and is responsible for the support of three dependents.  He works full time at a Giant Supermarket, where he was due to begin training for a recent promotion on November 4, 2016.  He has never failed to appear when required, nor are other charges currently pending against him.  His record shows that he successfully terminated one prior probation and one term of supervised release, but failed to successfully complete two prior probation periods.

While the Court believes the Defendant's showing is sufficient to overcome the presumption that a defendant may not appear as required, it does not overcome the presumption of the danger to the community if he were released, i.e., the danger that he will continue to sell firearms and narcotics if released.  Accordingly, the presumption as to Defendant's dangerousness remains.  As demonstrated below, however, detention would be required even had Defendant rebutted the presumption entirely.  Each of the four Section 3142(g) factors would favor detention, especially when coupled with the weight of the rebutted presumption.

### C.      The Four Factors of Section 3142(g)

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer considers, in addition to the rebutted presumption: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

#### 1.      *Nature and Circumstances of the Charged Offense*

The first factor, the nature and circumstances of the charged offense, favors detention. This factor asks the Court to consider "the nature and circumstances of the offense charged" as a general matter, but points especially to instances where "the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." *Id.* § 3142(g)(1).

Here, the government established probable cause to believe Defendant unlawfully sold, on multiple occasions, cocaine base and firearms – firearms which he himself could not lawfully possess as he is a convicted felon. Defendant faces a maximum of twenty years in prison for each of the cocaine base charges, and life in prison for the charge of using a firearm during a drug trafficking offense: significant penalties reflecting the seriousness of the charges. Further, the rebuttable presumption Congress created for Defendant's offenses reflects its judgment that persons who commit these offenses likely pose a substantial threat to the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A); *Bess*, 678 F. Supp. at 934.

### 2.    *The Weight of the Evidence*

The Court finds that the weight of the evidence also favors detention.  The government's case against the defendant is strong.  Much of the evidence against Defendant was gained through the use of two confidential informants, all of whose interactions with Defendant were either recorded, contemporaneously observed by ATF agents, or both.  Those interactions comprise three successful and three unsuccessful controlled purchases of firearms and cocaine base from Defendant.  The evidence recovered during the October 27, 2016 search of Defendant's apartment further corroborates that he was trafficking in both drugs and firearms at the time of his arrest.

### 3.    *The History and Characteristics of the Defendant*

This factor also supports detention.  Section 3142 directs the Court to consider:  (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law.  18 U.S.C. § 3142(g)(3)(A)–(B).

The Court appreciates Defendant's employment, his lifelong residence in this community, and responsibility for the support of three dependents.  However, other elements of his history outweigh these considerations.  Primary amongst these considerations is Defendant's record of criminal convictions and prior violations of conditions of release.  In April 2006, he was sentenced to nine months' probation for driving an unregistered vehicle without a license.  This probation was closed unsatisfactorily in October 2006, when he was sentenced to 120 days' confinement and

one year's probation for possession of marijuana with the intent to distribute.  In August 2008, he

was sentenced to ten months' confinement and five years' supervised release for attempted distri-

bution of cocaine.  That term of supervised release was closed successfully on June 26, 2014.  Prior

to its expiration, however, Defendant was sentenced to a year's probation, first for driving under

the influence in August 2013, and then again for misdemeanor possession of cocaine in June 2014.

Based on this record, the U.S. Pretrial Services Agency concurred in the government's

view that no release conditions could reasonably assure the appearance of the Defendant as re-

quired or the safety of the community if Defendant were to be released.  The Court agrees.  Cer-

tainly, Defendant has made no showing of any conditions that might assuage the Court's—or Con-

gress'—concern about the likelihood of pretrial recidivism were he to be released.  *See Stone*, 608

F.3d at 945–46.

### 4.    *The Danger to the Community*

The fourth factor, the danger to the community posed by the Defendant, weighs in favor of

detention.  The Court is cognizant that cocaine base—commonly referred to as crack cocaine—is

extremely harmful to the user and to the community, which bears the cost of drug treatment pro-

grams and of the violence that often accompanies its use.  The danger that Defendant may continue

trafficking in crack cocaine if he were released is further amplified by the Defendant's seeming

willingness to engage in unlawful firearms sales as well. Were Defendant to be released—even

under high intensity supervision—to his mother's residence or that of his girlfriend, the Court has

no confidence that he would not continue trafficking in both narcotics and firearms from wherever

he would be located.

For these reasons, the Court believes that there is no condition or combination of conditions

that would reasonably assure the safety of the community if Defendant were released.

## CONCLUSION

Based on the consideration of all the evidence and the factors set forth in Section 3142(g), the rebuttable presumption under Section 3142(e)(3)(A), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of any other person or of the community if Defendant were released.  Therefore, the government's motion for pretrial detention is granted.


Date:  November 4, 2016                          _____

                                                G. MICHAEL HARVEY
                                                UNITED STATES MAGISTRATE JUDGE